MÉNDEZ *v.* EL REGISTRADOR DE LA PROPIEDAD.

Recurso gubernativo contra nota del Registrador de la Propiedad de Caguas.

No. 119.—Resuelto en junio 29, 1912.

ENAJENACIÓN DE DERECHOS HEREDITARIOS—PARTICIÓN DE HERENCIA.—El derecho de un heredero a la herencia de su padre, nace desde el momento en que ocurre

el fallecimiento del padre, y desde ese momento puede el heredero enajenar válidamente todos sus derechos hereditarios a la herencia de su padre.

Id.—Partición y Adjudicación de la Herencia.—De acuerdo con la doctrina establecida en el párrafo anterior, el hecho de que una escritura de cesión de derechos hereditarios se otorgara el mismo día en que se verifica la partición de dicha herencia, y con anterioridad a la aprobación judicial de dicha partición y a su protocolización en una notaría, no es un defecto insubsanable que impida la inscripción de la escritura de cesión de derechos hereditarios, ni está en pugna con los preceptos del artículo 17 de la ley hipotecaria, pues no se trata en ese caso de inscribir un título anterior o de igual fecha, otorgado por persona distinta de la que aparece con derecho en el registro, sino de un título otorgado precisamente por la que aparece con derecho en el registro.

Id.—Terceros.—No tiene la condición de tercero con respecto al adquiriente de derechos hereditarios, el heredero que le cedió todos sus derechos hereditarios en la herencia de su padre, y cuyos derechos el cesionario inscribió posteriormente ya concretados en determinados bienes, por virtud de la partición de herencia.

Id.—Inscripción de la Escritura de Enajenación en los Bienes Adjudicados al Vendedor.—El comprador de derechos y acciones de una herencia, que presenta al registro para su inscripción sobre los bienes adjudicados a su vendedor, la escritura de cesión de derechos hereditarios, tiene derecho a que dicha escritura se inscriba sobre los bienes adjudicados al heredero que le cedió sus derechos hereditarios.

Id.—Descripción de las Fincas—Defectos Subsanables.—Cuando el que adquiere por compra derechos hereditarios de un heredero, presenta al registro para su inscripción la escritura de venta de dichos derechos hereditarios acompañada de un escrito en donde consta la descripción de la finca adjudicada al heredero que le vendió sus derechos, si la descripción dada en el escrito concuerda con la que aparece en el registro a favor de la inscripción de las particiones, dicho escrito es suficiente, y no puede decirse que dicha escritura adolece del defecto subsanable de no describirse en ella las fincas.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. Andrés Mena.*

El recurrido compareció en nombre propio.

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El 26 de noviembre de 1909 comparecieron ante notario público, Pedro Juan Palou y Jiménez y Manuel Méndez Dueño y el primero vendió al segundo todos los derechos que tenía a la herencia de su padre Don Jaime Palou y Bosch. Presentado para su inscripción en el Registro de la Propiedad de Caguas el indicado documento público, acompañado de un escrito en el que se describen los bienes con respecto

a los cuales se solicita la inscripción, el registrador se negó
a verificarla por medio de la siguiente nota, contra la cual se
ha interpuesto el presente recurso gubernativo:

"Denegada la inscripción del precedente documento, por lo que
respecta a una finca rústica y tres participaciones en tres fincas más
de igual naturaleza, radicadas en los barrios de Gurabo Abajo, Ceiba
Norte, Gurabo Abajo y Lirios, del término municipal de Juncos res-
pectivamente, cuya inscripción se solicita en un escrito, por el defecto
insubsanable de que, según el registro, el cedente adquirió dicha finca
y las citadas participaciones en las otras tres fincas, por herencia de
su padre Don Jaime Palou y Bosch, en las particiones de dicha heren-
cia verificadas con fecha veinte y seis de noviembre de mil novecientos
nueve, cuyas particiones fueron aprobadas por la Corte de Distrito
de Humacao en resolución de treinta de noviembre del mismo año
y protocoladas por escritura otorgada ante el notario de Humacao
Don Salvador Fulladosa y Mir, con fecha primero de diciembre del
repetido año, y que el precedente documento fué otorgado el veinte y
seis de noviembre de mil novecientos nueve, fecha igual a la de las
particiones citadas y anterior a la de su aprobación y protocolización,
por cuyo motivo no puede practicarse la inscripción, de acuerdo con
el artículo diez y siete de la Ley Hipotecaria; habiéndose tomado
en su lugar anotación preventiva por el término legal de ciento veinte
días, a favor del cesionario, a los folios 143, 137 vuelto, 141 y 209
también vueltos, del tomo 15 de Juncos, fincas números 681, 679 dupli-
cado, 680 y 30 triplicado, anotaciones letras A y B, respectivamente,
con el defecto subsanable de no describirse las referidas fincas en el
precedente título."

Según aparece del documento de referencia, el falleci-
miento del padre de Pedro Juan Palou ocurrió el 13 de julio
de 1902, bajo testamento que otorgara ante notario público
y en el cual instituyó por herederos a sus hijos y a su esposa.
Desde esa fecha nació el derecho de Pedro Juan Palou a la
herencia de su padre, y por consiguiente pudo enajenarlo
válidamente en 26 de noviembre de 1909, y su enajenación,
hecha en legal forma, debe surtir los efectos consiguientes.

"El derecho hereditario se considera como un derecho real, y por
tanto será inscribible su enajenación aunque no se haya verificado la
adjudicación correspondiente, con tal que se halle previamente inscrito

a favor del trasmitente (V. Resoluciones de 22 agosto, 1863, y 16 de dbre., 1876), y éste aunque sólo sea un partícipe el que enajena y aunque la participación esté determinada por la cantidad que representa su valor, y no por la parte alícuota de la finca.

"Autorizada la inscripción del título de herencia sin distinguir la testada de la intestada; la que se halla aceptada, de la pendiente de aceptación, y la que corresponde a un solo heredero, de la que pertenece a varios *proindiviso,* es evidente, que procede de igual modo la inscripción de las enajenaciones o cesiones que de su respectivo derecho hereditario hagan las personas que a su nombre lo tengan inscrito." (Resolución de 16 dbre., 1876.)  (2 Galindo, Legislación Hipotecaria, 270.)

Pero el registrador sostiene en su nota, y con mayor amplitud en su alegato de 4 de junio actual, que la escritura de cesión de derechos hereditarios se otorgó el mismo día, 26 de noviembre de 1909, en que se verificó la partición de la herencia de Don Jaime Palou y Bosch; que esta partición se aprobó el 30 de noviembre de 1909, se protocoló el 1 de diciembre del mismo año, y se inscribió luego en el registro de la propiedad, y que por tanto, de acuerdo con lo que prescribe el artículo 17 de la Ley Hipotecaria, no es posible verificar la inscripción de los bienes adjudicados e inscritos a nombre de Pedro Juan Palou a virtud de la partición, a favor del adquirente de los derechos hereditarios.

Inscrito o anotado preventivamente en el registro, dice el citado artículo 17, cualquier título traslativo de dominio o de la posesión de los inmuebles o de los derechos reales impuestos sobre los mismos, no podrá inscribirse o anotarse ningún otro de igual o anterior fecha por el cual se trasmita o grave la propiedad del mismo inmueble o derecho real. A nuestro juicio la regla clara y precisa que contiene el artículo 17 de la Ley Hipotecaria, no sostiene el criterio adoptado por el registrador en este caso. Es cierto que a virtud de la partición fué que se inscribió el derecho de Juan Palou y Jiménez a los bienes que heredara de su padre, derecho ya perfectamente definido y adjudicado. Es cierto también que para mayor claridad debieron Palou y Méndez haber espe-

rado a la aprobación judicial de la partición y haber otorgado una escritura de venta de bienes claramente determinados. Pero es cierto de igual modo que Palou vendió a Méndez todos sus derechos a la herencia de su padre y que el hecho de haberse definido esos derechos, de haberse concretado en determinados bienes e inscrito de tal modo en el registro de la propiedad, no debe ni puede servir de base para negar la inscripción a favor del comprador.

No se trata de inscribir un título anterior o de igual fecha, otorgado por persona distinta de la que aparece con derecho en el registro, sino de un título otorgado precisamente por el que aparece con derecho en el registro. La venta fué de todos los derechos a la herencia y por lo tanto debe considerarse comprendido en cualquier derecho que se fije y determine después a favor del vendedor en la herencia vendida.

Además, el espíritu del artículo 17 de la Ley Hipotecaria es el mismo que informa la ley en su totalidad, a saber: garantizan a los terceros adquirentes, asegurándoles que cuando actúan de buena fe y compran de aquel que en el registro aparece como dueño, su derecho será reconocido como válido aunque se anule después el título de su vendedor, y nosotros no podemos percibir que Pedro Juan Palou, que vendió primero sus derechos hereditarios a Méndez e inscribió después por la partición esos mismos derechos ya concretados en determinados bienes, pueda tener la condición de tercero con respecto a Méndez. (Véase Galindo, Legislación Hipotecaria, tomo 1, pág. 654.)

Podría decirse que la escritura de venta de derechos y acciones a la herencia de Don Jaime Palou, en las condiciones en que se hizo, procedía inscribirla en todos los bienes de la herencia. Pero este no es el caso. El comprador sólo ha pretendido inscribirla, aceptando implícitamente la validez de la partición, sobre los bienes adjudicados a su vendedor. Si hubiera tratado de inscribirla con respecto a bienes de la misma herencia adjudicados e inscritos a favor de los otros herederos, entonces procedería, de acuerdo con

el artículo 17 de la ley, negar dicha inscripción, porque dichos·
otros herederos eran personas distintas de aquella que con
él habían contratado y tenían claramente con respecto a él
la condición de terceros.

También se consigna en la nota recurrida que existe el·
defecto subsanable de no describirse las fincas en el título.
Nos parece que si la descripción dada a las fincas en el es-
crito acompañado al título, concuerda con la que aparece en
el registro a virtud de la inscripción de las particiones, dicho·
escrito es suficiente.

Por las razones indicadas, la nota del registrador de 30
de abril de 1912 debe revocarse y ordenarse a dicho funcio-
nario que proceda a verificar la inscripción solicitada de·
acuerdo con los principios establecidos en esta opinión.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados MacLeary, Wolf y Aldrey.